ROBERT S. GIANELLI, #82116
JOSHUA S. DAVIS, #193187
GIANELLI & MORRIS, A Law Corporation
550 South Hope Street, Suite 1645
Los Angeles, California 90071
Tel: (213) 489-1600; Fax: (213) 489-1611
rob.gianelli@gmlawyers.com
joshua.davis@gmlawyers.com

Attorneys for Plaintiff
JACQUELINE ADAN, on behalf of herself and
all others similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE ADAN, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> KAISER FOUNDATION HEALTH PLAN, INC., <br><br> Defendant. | CASE NO. <br><br> **COMPLAINT FOR RECOVERY OF ERISA PLAN BENEFITS; CLASS ACTION COMPLAINT FOR CLARIFICATION OF RIGHTS AND BREACH OF FIDUCIARY DUTY** |

///
///
///
///
///
///
///
///

1

*Complaint*

Plaintiff Jacqueline Adan, on behalf of herself and all others similarly situated, alleges as follows:

## NATURE OF THE ACTION

1. California's reconstructive surgery law, Health & Safety Code section 1367.63 ("section 1367.63") was passed because health plans were refusing to cover surgery for disfigurements unless they caused functional impairment, and ignored the benefit of restoring a normal appearance. The law remedied this inequity by defining "reconstructive surgery" as surgery performed to improve function *or* "[t]o create a normal appearance, to the extent possible." Section 1367.63(c)(1)(A)(B), emphasis added. Defendant Kaiser Foundation Health Plan, Inc. ("Kaiser") fails to apply this law to thousands of its members who suffer from excess skin hanging from their abdomens, arms and other body areas as a result of massive weight loss following bariatric surgery or rigorous weight loss regimens. Kaiser wrongfully denies excess skin surgery requests by failing to assess whether the surgery will achieve a normal appearance or by wholly rejecting surgery for certain body parts such as for thighs. And although Kaiser lost a class action lawsuit requiring it to change its excess skin surgery practices in conformity with section 1367.63, *Gallimore v. Kaiser Foundation Health Plan, Inc.*, Alameda County Superior Court Case No. RG12616206, Kaiser has failed to provide notice of any changes to ERISA beneficiaries and continues to reject their excess surgery claims as it has with the plaintiff here.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court over the subject matter of this action is predicated on 29 U.S.C. § 1132(e)(1) and (f) in that, at all times mentioned, Plaintiff's claim for benefits was covered under the terms of an employee benefit plan, within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"). Jurisdiction is further predicated on 29 U.S.C. § 1331, federal question jurisdiction, in that this action arises under the laws of the United States.

3. Venue is proper in this district under 29 U.S.C. § 1132(e)(2), because Plaintiff resides in San Mateo, California and Kaiser has its headquarters in Oakland, California.

## THE PARTIES

4. At all relevant times, Plaintiff was covered under a group policy issued by Kaiser.

5. Kaiser is a corporation licensed to do business in California.

## SUBSTANTIVE ALLEGATIONS

**A.  Kaiser**

6. Kaiser is California's largest health plan covering approximately 8 million California residents. It is licensed by the California Department of Managed Health Care and subject to the provisions of the Knox-Keene Act regulating managed care plans that are set forth in the California Health & Safety Code. Under this regime, a contract is called an Evidence of Coverage ("EOC"), the person purchasing the coverage (or eligible for it through employment) is called the "subscriber" or "member," and the entity providing the coverage is the "plan." Health & Safety Code, section 1345.

7. Kaiser members are provided EOCs setting forth the terms and conditions of their coverage. Superimposed on these terms and conditions are the certain obligations imposed on Kaiser under the Health & Safety Code. One such statutory obligation is the requirement to comply with California's reconstructive surgery law set forth in section 1367.63.

**B.  Excess skin surgery.**

8. Many of Blue Shield's members who are obese achieve massive weight loss through bariatric surgery or participation in weight loss programs. The vast majority of these members lose 100 pounds or more.

9. The health benefits and health care savings that result from the massive weight loss are obvious. The weight loss, however, results in excess skin permanently hanging from the patients' abdomen, arms and other areas of the body. The left-over, disfiguring excess skin can have dramatic mental and physical effects on the patient.

10. Almost all massive weight loss patients need excess skin surgery to resolve their disfiguring excess skin. The most common excess skin surgery requested to treat disfiguring excess skin following massive weight loss is a panniculectomy. A panniculectomy is the surgical removal of a pannus, the excess skin that hangs from the lower abdomen. The other excess skin surgeries commonly requested by massive weight loss patients are: abdominoplasties (upper and lower abdomen with tighening), brachioplasties (arms), thighplasties (thighs), and circumferential body lifts. All of the foregoing surgeries are referenced hereinafter as "excess skin surgeries."

C. **California's reconstructive surgery law.**

11. The California legislature enacted section 1367.63 in 1998. It provides in relevant part:

> a) Every health care service plan. . . shall cover reconstructive surgery, as defined in subdivision (c), that is necessary to achieve the purposes specified in subparagraph (A) or (B) of paragraph (1) of subdivision (c).
>
> . . .
>
> (c)(1) "Reconstructive surgery" means surgery performed to correct or repair abnormal structures of the body caused by congenital defects, developmental abnormalities, trauma, infection, tumors, or disease to do *either* of the following:
> (A) To improve function.
> *(B) To create a normal appearance, to the extent possible.*
>
> . . .
>
> (e) In interpreting the definition of reconstructive surgery, a health care service plan may utilize prior authorization and utilization review that may include, but need not be limited to, any of the following:
>
> . . .
>
> *(2) Denial of the proposed surgery or surgeries if the procedure or procedures, in accordance with the standard of care as practiced by physicians specializing in reconstructive surgery, offer only a minimal improvement in the appearance of the enrollee.*

(Emphasis added.)

12. The law was passed to prohibit health plans from denying claims for reconstructive surgery on the basis of functionality alone. "[M]any plans will cover reconstructive surgery only if it will improve a bodily function … AB 1621 requires plans to also cover surgeries necessary to restore someone to a normal appearance." (August 31, 1998 Letter from the Legislature to Governor Wilson.)

13. "Reconstructive surgery"—surgery the statute deems covered under health plan contracts—is defined as surgery that will either "improve function" or "create a normal appearance, to the extent possible." Section 1367.63(c)(1). Thus, in assessing whether a proposed surgery meets the definition of reconstructive surgery, health plans cannot rely solely on functionality determinations. They must alternatively assess whether "normal appearance" can be achieved "to the extent possible."

D. **Kaiser's unlawful excess skin surgery practices.**

14. Kaiser provides services to members covered under its health plan through its affiliated medical groups, the Southern California Medical Group ("SCPMG") and The Permanente

4

*Complaint*

Medical Group ("TPMG").[1]

15. Under Kaiser's supervision and direction, the plastic surgeons at SCPMG and TPMG have developed and implemented "Surgical Guidelines" to determine when plastic surgery is deemed "medical" and covered or "cosmetic" and excluded under the members' contracts.

16. The guidelines have deemed excess skin surgery cosmetic and excluded. They make an "exception" for one procedure, a panniculectomy (a removal of excess skin and fat from the lower abdomen) but only if the amount of hanging skin is extreme *and* causing functional problems such as "uncontrolled intertriginous dermatitis, difficulty walking and occasionally actual skin necrosis . . . ."

17. Kaiser's plastic surgeons have followed these guidelines and refuse to authorize excess skin surgery if doing so will only create a normal appearance. As Dr. Mancusi-Ungaro, TPMG's former Chief of Plastic Surgery and "most qualified" witness, stated:

> Q. Well, someone who had hanging skin -- such as a pannus that was down let's say beyond the pubic bone but had no functional problems and wanted it removed wouldn't qualify under these guidelines, true?
> A. Correct.
> Q. TPMG has not authorized surgery to correct problems of appearance without function, true?
> A. True.

(December 3, 2012 Mancusi-Ungaro Depo., 78:11-19.)

18. SCPMG has also followed its Surgical Guidelines in refusing to approve any excess skin surgery except for a panniculectomy when the pannus is extreme and functional problems are present. Dr. Tan, SCPMG's Chief of Plastic Surgery and "most qualified" witness, testified:

> Q. Was there anything in either guidelines, the 2006 or 2011 guidelines, with respect to panniculectomy -- or indicated that panniculectomy would be indicated or appropriate solely on the basis of appearance?
> A. No.
> Q. Why is that?
> A. Surgery to address what is appearance-related generally is not medically indicated.
> Q. And therefore, cosmetic?
> A. Yes.

(October 30, 2012 Tan Depo., 52:13-23.)

---

[1] Kaiser states on its website that "the way we deliver health care is different. We are the caregiver, the hospital, the laboratory, and the pharmacy. In fact, what makes us unique is that we play every position across the care continuum— providing the health care coverage and delivering the health care itself." *See* www.kaiserpermanentejobs.org/our-business-structure.aspx.

5

19. Kaiser plastic surgeons have also refused to cover surgery to address excess skin hanging from the arms (brachioplasty), thighs (thighplasty), and torso (circumferential body lift).

### E. *Gallimore v. Kaiser.*

20. In *Gallimore v. Kaiser Foundation Health Plan, Inc., supra*, the plaintiff alleged that Kaiser systematically violated section 1367.63 by denying requests for excess skin surgery without applying the law's "normal appearance" prong or just outright refusing to perform certain excess skin surgeries. The case was certified as a class action and went to trial in March of 2015. A judgment was ultimately entered against Kaiser in which it was determined that Kaiser's practices failed to comply with section 1367.63. In doing so, the court rejected Kaiser' argument that the statute did not apply to excess skin surgeries because they were not "caused by" a disease—obesity. The judgment required Kaiser to changes its practices in conformity with the law. The judgment became final on December 12, 2015.

21. During post-judgment enforcement proceedings, Kaiser represented to the court it had instituted changes to its plastic surgery guidelines in compliance with section 1367.63 and that said changes were communicated to all Kaiser plastic surgeons by late March of 2016. As part of the post-judgment proceedings, Kaiser was further required to provide notice to the class of the judgment and the changes it was making in conformance therewith. Kaiser represented to the court that notice had been provided to all class members by June of 2016.

### F. Kaiser's continued practices, its failure to notify ERISA members, and its failure to comply with ERISA's claims handling procedures.

22. Despite the foregoing, Kaiser physicians continue to violate section 1367.63 by wholly failing to assess whether a surgery can create a normal appearance to the extent possible in conformity with section 1367.63 and refusing to cover certain excess skin surgeries altogether such as circumferential body lifts and thighplasties. Additionally Kaiser's physicians now advise excess skin patients that their conditions are due to weight loss, ignoring the underlying disease of obesity and the court's rejection of that defense in *Gallimore v. Kaiser Foundation Health Plan, Inc.*

23. Additionally, following the judgment in *Gallimore v. Kaiser Foundation Health Plan, Inc.,* Kaiser did not provide any notice to ERISA members regarding the change in excess skin

practices it had undertaken. Thus, ERISA members who were previously denied excess skin surgery under Kaiser's illegal standards have not been advised that they may have their excess skin reviewed under appropriate guidelines.

24. Kaiser has also violated ERISA, 29 U.S.C. § 1133, and its implementing regulations, 29 C.F.R. 2560.503-1, by failing to provide claimants with written or electronic notice of adverse benefit determinations. As a result, claimants whose requests for excess skin surgery are denied receive no written or electronically recorded information concerning: (1) the specific reason or reasons for the denial; (2) the specific plan provisions on which the denial was based; (3) a description of the plan's review procedures and the time limits applicable to such procedures; (4) Kaiser's internal rules, guidelines, protocols or other similar criterion for handling excess surgery claims; and (5) an explanation of the scientific or clinical judgment for the denial, to the extent medical necessity is relied on as a basis for the denial.

### G. Plaintiff Jacqueline Adan

25. Plaintiff was and is covered under the terms of a group policy issued by Kaiser to a private employer.

26. Plaintiff was morbidly obese. She embarked on an aggressive weight loss program and lost a massive amount of weight.

27. As a result of her massive weight loss, Plaintiff was rewarded with immediate health benefits but left with disfiguring excess skin hanging from her arms, legs, and torso. This excess skin caused Plaintiff functional problems and created an abnormal appearance such that she qualified for reconstructive surgery under section 1367.63.

28. In April of 2015, Plaintiff saw Dr. Yap, her primary care physician ("PCP") under her Kaiser health plan, to address her various excess skin issues. Dr. Yap observed that Plaintiff suffered from numerous functional and abnormal appearance problems as a result of her excess skin. Despite these problems, Dr. Yap advised Plaintiff that excess skin surgery is considered "cosmetic" and not covered under her health plan. Dr. Yap referred Plaintiff to Kaiser's cosmetic department, where Plaintiff was to pay out-of-pocket for any surgical services rendered.

7

29. Kaiser did not provide Plaintiff with written or electronic notice regarding Dr. Yap's denial of her request for excess skin surgery.

30. In July of 2015 Plaintiff saw Dr. Salim at Kaiser San Francisco pursuant to Dr. Yap's cosmetic department referral. Dr. Salim advised Plaintiff that he did not perform circumferential body lifts, and stated that "no one at Kaiser does that." Dr. Salim advised that he could do either a "tummy tuck" or a panniculectomy—at Plaintiff's cost—but that Plaintiff's excess skin issues were much more extensive and that these procedures would only be marginally beneficial.

31. Kaiser did not provide Plaintiff with written or electronic notice regarding Dr. Salim's denial of her request for excess skin surgery.

32. Plaintiff subsequently requested authorization to go outside of Kaiser's physician network to obtain a circumferential body lift. Kaiser refused Plaintiff's request on April 21, 2016, stating that "appropriate care is available within the plan." Kaiser referred Plaintiff to the Redwood City Plastic Surgery Department for further evaluation.

33. Plaintiff then saw Dr. Kim in Redwood City. Dr. Kim also advised Plaintiff that she did not perform circumferential body lifts, but that Dr. Salim at Kaiser San Francisco might. Dr. Kim further advised Plaintiff that Kaiser was "working on" staffing physicians who perform circumferential body lifts and to check back in a few years. Kaiser did not provide Plaintiff with written or electronic notice regarding Dr. Kim's denial of her request for excess skin surgery.

34. Kaiser did not provide Plaintiff with written or electronic notice regarding Dr. Kim's denial of her request for excess skin surgery.

35. Through her PCP, Plaintiff once again requested authorization to go outside of Kaiser's physician network to obtain a circumferential body lift. Kaiser refused Plaintiff's request on July 1, 2016, stating that it "has qualified medical professionals in Plastic Surgery to provide your care and services in plan."

36. In July of 2016, Plaintiff took matters into her own hands and had a circumferential body lift performed by Dr. Joel Beck, a physician outside of Kaiser's network. She paid $16,000 for the surgery.

37. On August 6, 2016, Kaiser affirmed its denial of Plaintiff's request for authorization to go outside of Kaiser's physician network to obtain a circumferential body lift. Once again, Kaiser stated that "appropriate care is available within the plan."

38. Following the circumferential body lift performed by Dr. Beck, Plaintiff once again requested an out-of-plan referral from Kaiser to address excess skin issues involving her arms, legs and breasts. Kaiser denied Plaintiff's request.

39. Plaintiff returned to her PCP, Dr. Yap, seeking another referral to address excess skin issues involving her arms, legs and breasts. Dr. Yap referred Plaintiff to Dr. Smith in Walnut Creek.

40. Dr. Smith advised Plaintiff that her health plan did not cover the requested excess skin surgery because the excess skin in Plaintiff's legs and arms was not life-threatening. Dr. Smith also stated in her notes, but did not advise Plaintiff, that Plaintiff's excess skin "is not the result of infection, developmental abnormalities, trauma, infection, tumors, or disease[.]"

41. Kaiser did not provide Plaintiff with written or electronic notice regarding Dr. Smith's denial of her request for excess skin surgery.

42. In November of 2016, Plaintiff had an upper body circumferential lift and had excess arm skin removed by Dr. Beck. Plaintiff paid $18,000 for the surgery, which was not covered by Kaiser.

43. Plaintiff continues to experience abnormal appearing excess skin issues in her thighs, calves and breasts and needs surgery that Kaiser refuses to provide.

## CLASS ALLEGATIONS

44. Pursuant to Rule 23(b)(1) and (b)(2) of the Federal Rules of Civil Procedure, Plaintiff seeks class certification of a class defined as:

> All California members of Kaiser Foundation Health Plan, Inc. covered under private employer plans who have made requests for excess skin surgery following weight loss at any time within the applicable statute of limitations, or who will make such requests in the future.

45. The proposed classes meet the requirements of Rule 23 in that:

   a. The members of the class are so numerous that joinder of all members is impracticable;

     b.     The members of the class are ascertainable;

     c.     Common questions of law and fact exist as to all members of the class;

     d.     Plaintiff's claims are typical of the claims of the members of the class and Plaintiff and the members of the class are similarly affected by Kaiser's wrongful conduct;

     e.     Plaintiff will fairly and adequately protect the interests of the members of the class and have retained counsel competent and experienced in class and insurance litigation;

     f.     Inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for Kaiser;

     g.     Kaiser has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;

     h.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since it will promote judicial economy and avoid inconsistent individual results.

**FIRST CLAIM FOR RELIEF**
**(On Behalf of Plaintiff for Benefits Due and on behalf of the Plaintiff and the Class for Clarification of Rights under an ERISA Plan [29 U.S.C. § 1132(a)(1)(B)])**

46.    Plaintiff hereby repeats and realleges paragraphs 1 through 45 and incorporates same as though fully set forth herein.

47.    29 U.S.C. § 1132(a)(1)(B) entitles Plaintiff to recover benefits due and to enforce and clarify her rights to the benefits at issue.

48.    As set forth above, Kaiser systematically refuses to comply with section 1367.63. Kaiser has a pattern and practice of systematically refusing to cover excess skin surgery to correct or repair abnormal structures of the body to create a normal appearance to the extent possible. Kaiser also has a pattern and practice of categorically denying requests for the procedures specified at paragraph 22, *supra*, and, with respect to these procedures, systematically ignores both the functional impairment standards and the "normal appearance" prongs of section 1367.63(c).

49. In denying requests for excess skin surgery, Kaiser has also violated ERISA, 29 U.S.C. § 1133, and its implementing regulations, 29 C.F.R. 2560.503-1, by failing to provide claimants with written or electronic notice of adverse benefit determinations.

50. Pursuant to the foregoing pattern and practice, Kaiser improperly denied Plaintiff's requests for excess skin surgery. There is now due and owing to Plaintiff benefits, interest, and attorneys' fees in an amount to be determined at the time of trial.

51. On behalf of the class, Plaintiff seeks a clarification of rights relating to Kaiser's systematic violation of section 1367.63 in denying requests for excess skin surgery and doing so in violation of ERISA, 29 U.S.C. § 1133, and its implementing regulations, 29 C.F.R. 2560.503-1.

**SECOND CLAIM FOR RELIEF**
**(On Behalf of Plaintiff and the Class for Breach of Fiduciary Duty**
**under an ERISA Plan [29 U.S.C. § 1132(a)(3)])**

52. Plaintiff and the Class hereby repeat and reallege paragraphs 1 through 51 and incorporate same as though fully set forth herein.

53. Kaiser acts as an ERISA fiduciary with respect to the administration and claims decisions of the group health policies it issues to employers, such as the policy at issue, within the meaning of 29 U.S.C. §§ 1109(a) and 1002(21)(A). With respect to these policies, Kaiser exercises discretionary authority or control respecting management of the plans, exercises authority or control respecting management or disposition of the plans' assets. Kaiser has the authority, and actually exercises the authority, to fund the plans, make decisions on claims for benefits and appeals thereof, and to write checks for benefits.

54. Kaiser has systematically violated section 1367.63 and has improperly denied requests for excess skin surgery, as alleged above.

55. In addition, as further alleged above, Kaiser has violated ERISA, 29 U.S.C. § 1133, and its implementing regulations, 29 C.F.R. 2560.503-1 by failing to provide claimants with written or electronic notice of adverse benefit determinations.

56. In acting and failing to act as described above, Kaiser has breached its fiduciary duties.

57. Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff and the Class seek equitable and remedial relief as follows:

     a.    An order declaring that Kaiser's practices violate: (1) California's reconstructive surgery law (specifically section 1367.63) and (2) ERISA, 29 U.S.C. § 1133, and its implementing regulations, 29 C.F.R. 2560.503-1;

     b.    An injunction compelling Kaiser to: (1) comply with section 1367.63; (2) provide notice to ERISA members regarding changes in its excess skin practices; (3) provide for the re-review of all improperly denied claims; and (4) provide claimants with written or electronic notice of adverse benefit determinations;

     c.    An accounting of any profits made by Kaiser from the monies representing the improperly denied claims and disgorgement of any profits;

     d.    Such other equitable and remedial relief as the Court may deem appropriate; and

     e.    Attorneys' fees in an amount to be proven at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for judgment against Kaiser as follows:

1. Benefits denied Plaintiff in an amount to be proven at trial, including interest;
2. A clarification of rights to future benefits under the plan for all class members;
3. Injunctive and declaratory relief, as described above;
4. An accounting of any profits made and retained through the improper denial of claims and disgorgement of any profits;
5. Attorneys' fees; and
6. Such other equitable and remedial relief as the Court may deem just and proper.

DATED: March 1, 2017          GIANELLI & MORRIS

          By:  /s/ Joshua S. Davis
                ROBERT S. GIANELLI
                JOSHUA S. DAVIS
                Attorneys for Plaintiff