UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE ADAN,<br><br>    Plaintiff,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC.,<br><br>    Defendant. | Case No.17-cv-01076-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 15 |

Pending before the Court is Defendant Kaiser Foundation Health Plan, Inc.'s motion to dismiss Plaintiff Jacqueline Adan's Complaint. Dkt. No. 15. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion.[1]

# I.   BACKGROUND

Plaintiff brings this putative class action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). For purposes of this motion, the Court takes the following allegations to be true.

## A.   Factual Allegations

Defendant is California's "largest health plan," and provides coverage for "approximately 8 million California residents," including Plaintiff. Dkt. No. 1 (Complaint or "Compl.") ¶ 6. Plaintiff "was and is covered" by a group policy issued by Defendant to her private employer. *Id.* ¶ 25. The policy is an employee benefit plan within the meaning of ERISA. *Id.* ¶ 2. A document called the Evidence of Coverage ("EOC") sets forth the terms and condition of plan members' coverage. *Id.* ¶ 7.

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

Plaintiff was previously "morbidly obese," and so "embarked on an aggressive weight loss program and lost a massive amount of weight." *Id.* ¶ 26. As a result, she was "left with disfiguring excess skin hanging from her arms, legs, and torso." *Id.* ¶ 27. Plaintiff's case centers on her attempts to obtain from Defendant coverage of surgery that would remove her excess skin ("excess skin surgery").

### 1. Defendant's Internal Guidelines for Excess Skin Surgery

Plaintiff asserts that under California law, Defendant is required to cover plastic surgery when it is meant "to improve function *or* to create a normal appearance, to the extent possible." *See id.* ¶ 1 (quoting Cal. Health & Safety Code § 1367.63(c)(1)(A)(B)) (internal quotation marks and brackets omitted) (original emphasis); *see also id.* ¶¶ 11-13. Defendant's plastic surgeons have developed guidelines "to determine when plastic surgery is deemed 'medical' and covered or 'cosmetic' and excluded" by a member's health plan. *Id.* ¶ 15. Defendant's guidelines have "deemed excess skin surgery cosmetic and excluded" from coverage, with one exception: "a panniculectomy (a removal of excess skin and fat from the lower abdomen) but only if the amount of hanging skin is extreme *and* causing functional problems." *Id.* ¶ 16 (original emphasis). In keeping with these guidelines, Defendant's surgeons have "refused to authorize excess skin surgery if doing so will only create a normal appearance." *Id.* ¶ 17.

### 2. Plaintiff's Attempts at Obtaining Coverage for Excess Skin Surgery

Plaintiff first attempted to address her excess skin issues in April 2015, when she met with her primary care physician under Defendant's health plan, Dr. Yap. *Id.* ¶ 28. Dr. Yap informed Plaintiff that excess skin surgery was "cosmetic" and therefore not covered, and referred her to Defendant's cosmetic department, where she would pay out-of-pocket for any services she received. *Id.* Plaintiff alleges that Defendant "did not provide [her] with written or electronic notice regarding Dr. Yap's denial of her request for excess skin surgery." *Id.* ¶ 29.

In July 2015, Plaintiff met with Dr. Salim at Defendant's San Francisco location, following Dr. Yap's referral. *Id.* ¶ 30. She sought a type of excess skin surgery known as a "circumferential body lift." *Id.* Dr. Salim informed Plaintiff that neither he nor any of Defendant's practitioners performed that type of surgery. *Id.* He advised Plaintiff regarding certain "marginally beneficial"

surgeries he could perform "at Plaintiff's cost," but concluded that her "excess skin issues were much more extensive." *Id.* Plaintiff alleges that Defendant "did not provide [her] with written or electronic notice regarding Dr. Salim's denial of her request for excess skin surgery." *Id.* ¶ 31.

Plaintiff next "requested authorization to go outside of Kaiser's physician network" to obtain the surgery. *Id.* ¶ 32. Defendant denied Plaintiff's request on April 21, 2016, "stating that 'appropriate care is available within the plan,'" and referring Plaintiff to its Redwood City Plastic Surgery Department "for further evaluation." *Id.* In Redwood City, Plaintiff met with Dr. Kim, who also told Plaintiff that she did not perform circumferential body lifts, "but that Dr. Salim at Kaiser San Francisco might." *Id.* ¶ 33. Plaintiff alleges that Defendant "did not provide [her] with written or electronic notice regarding Dr. Kim's denial of her request for excess skin surgery." *Id.* ¶ 34.

Through Dr. Yap, Plaintiff again requested authorization to go outside of Defendant's network to obtain a circumferential body lift. *Id.* ¶ 35. Defendant denied the request on July 1, 2016 because it had "qualified medical professionals in Plastic Surgery to provide your care and services in plan." *Id.* ¶ 35. That month, Plaintiff "took matters into her own hands and had a circumferential body lift performed by Dr. Joel Beck, a physician outside of Kaiser's network," for $16,000 at her own cost. *Id.* ¶ 36. After Plaintiff's surgery, Defendant "affirmed its denial of Plaintiff's request to go outside of its physician network," again stating that "appropriate care is available within the plan." *Id.* ¶ 37.

After Dr. Beck's out-of-network surgery, Plaintiff sought another "out-of-plan" referral from Defendant to "address excess skin issues involving her arms, legs, and breasts." *Id.* ¶ 38. Defendant denied her request. *Id.*

Plaintiff then sought another referral from Dr. Yap to address the issues involving her arms, legs, and breasts. *Id.* ¶ 39. Dr. Yap referred Plaintiff to Dr. Smith in Defendant's Walnut Creek location, who advised her "that her health plan did not cover the requested excess skin surgery because the excess skin in Plaintiff's legs and arms was not life-threatening." *Id.* ¶¶ 39-40. Defendant "did not provide Plaintiff with written or electronic notice regarding Dr. Smith's denial of her request for excess skin surgery."

1   In November 2016, Plaintiff again went out-of-network and had an "upper body circumferential

2   lift and had excess skin removed by Dr. Beck." *Id.* ¶ 42. She paid $18,000 for the surgery, which

3   Defendant did not cover. *Id.*

### 3. Defendant's Internal Grievance Procedures

The EOC contains two sections related to Defendant's internal grievance procedures—one for post-service claims and appeals, in which a member seeks reimbursement for services already received, and one for all other grievances. *See* Dkt. No. 33-1 ("EOC") at 50, 53.[2] Because Plaintiff challenges Defendant's response to her request for coverage of excess skin surgery *before* she received certain services, the Court turns to the latter.

In a section titled "Dispute Resolution," the EOC states describes a "grievance" as "any expression of dissatisfaction expressed by you or your authorized representative through the grievance process." *Id.* at 53. Among the reasons why a plan member might file a grievance: "[y]ou received a written denial of Services that require prior authorization from the Medical Group and you want us to cover the Services"; "[y]our treating physician has said that Services are not Medically Necessary and you want us to cover the Services"; and "[y]ou were told that services are not covered and you believe that the Services should be covered." *Id.* at 54.

A grievance may be filed "orally or in writing," and "must explain your issue, such as the reasons why you believe a decision was in error or why you are dissatisfied about Services you received." *Id.* A member may file a grievance by filing a designated form in person, by mail, or online, or by calling the Member Service Contact Center. *Id.* The policy dictates that members will receive a resolution letter within 30 days, and if the decision is adverse, the "letter will explain why and describe your further appeal rights." *Id.* at 55.

In the event that a grievance "has not been satisfactorily resolved by your health plan," or

---

[2] Although Plaintiff did not attach the EOC to the Complaint, the Court may nevertheless consider the EOC in resolving this motion because "a document not appended to a complaint 'may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Sizemore v. Pac. Gas & Elec. Ret. Plan*, 989 F. Supp. 2d 987, 989 (N.D. Cal. 2013) (quoting *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)). Plaintiff seeks to recover benefits allegedly owed to her under the EOC as well as a clarification of her rights under that plan, *see* Compl. ¶¶ 46-51, which is sufficient to show that it forms the basis of her claim.

4

1  "has remain unresolved for more than 30 days," the EOC lays out two forms of external review.
2  First, plan members may call the California Department of Managed Health Care, which regulates
3  health care service plans, for assistance. *See id.* at 56. Members "may also be eligible for an
4  Independent Medical Review (IMR)," which consists of "an impartial review of medical decisions
5  made by a health plan related to the medical necessity of a proposed service or treatment," among
6  other things. *Id.* Plan members "must exhaust our internal grievance procedure before [requesting
7  an IMR] unless we have failed to comply with the grievance procedure" detailed in the EOC. *See
8  id.* A plan member who decides not to request an IMR "may give up the right to pursue some
9  legal actions against us." *Id.*

Finally, in a section titled "Additional Review," the EOC states: "You may have certain additional rights if you remain dissatisfied after you have exhausted our internal claims and appeals procedure, and if applicable, external review." *Id.* at 57. As relevant here, the EOC states that where a plan is subject to ERISA, members "may file a civil action under section [1132(a)] of ERISA." *Id.*

## B. Procedural History

Plaintiff filed the Complaint on March 1, 2017. Dkt. No. 1. On April 27, 2017, Defendant filed this motion to dismiss. Dkt. No. 15 ("Mot."). Plaintiff filed her opposition on May 11, 2017, Dkt. No. 20 ("Opp."), and Defendant replied on May 18, 2017, Dkt. No. 24 ("Reply").

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). And even where facts are accepted as true, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that [she] cannot prevail on [her] . . . claim." *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted).

## III. DISCUSSION

Plaintiff alleges two causes of action under ERISA. First, she brings a claim under 29 U.S.C. § 1132(a)(1)(B) "to recover benefits due and to enforce and clarify her rights to the benefits at issue." Compl. ¶ 47. Second, she brings a claim under 29 U.S.C. § 1132(a)(3), alleging that Defendant breached its fiduciary duties when it "systematically" violated California's reconstructive surgery law and "improperly denied requests for excess skin surgery," and when it failed to follow reasonable claims procedures. *See id.* ¶¶ 54-56. The Court considers each claim in turn.

### A. Plaintiff's Failure to Exhaust Her Administrative Remedies Is Clear from the Face of the Complaint, Thus Precluding Her Section 1132(a)(1)(B) Claim.

Defendant argues that Plaintiff's first cause of action under section 1132(a)(1)(B) should be dismissed without prejudice due to her failure to exhaust administrative remedies. *See* Mot. at 4. The Court agrees, and begins by addressing the parties' requests for judicial notice.

#### 1. Because the parties seek judicial notice of materials which are more properly considered on a motion for summary judgment, their requests are denied.

Both parties filed requests for judicial notice in support of, *inter alia*, their positions on the question of exhaustion. *See* Dkt. No. 16 (Defendant's request for judicial notice); Dkt. No. 21 (Plaintiff's). Both requests are denied.

As relevant to the exhaustion issue, Defendant attempts to file "four letters from Kaiser to

Plaintiff . . . and the History of Requests for [Plaintiff]." Dkt. No. 16, Ex. A. Defendant reasons that these documents "are subject to judicial notice because they are documents which Plaintiff cites and upon which she relies in her Complaint and because they contain facts which 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" Dkt. No. 16 at 2 (citing Fed R. Evid. 201). Defendant further contends that "these documents are part of the administrative record . . . and their authenticity cannot reasonably be questioned." *Id.* (citing cases).

Defendant appears to conflate the doctrines of incorporation by reference and judicial notice. In any event, a document outside the pleadings cannot be incorporated by reference where it is not "reference[d] extensively" in the complaint or "integral to [the plaintiff's claim]." *See Ritchie*, 342 F.3d at 908. Here, Defendant proffers some of its written responses to Plaintiff's grievances. Plaintiff, however, does not refer to these responses—or even to her formal grievances—extensively in the Complaint. Nor are these administrative denials integral to her claim in the same way that the EOC is. *See M.O.R.E., LLC v. U.S.*, No. 12-cv-03609-JST, 2015 WL 5093621, at *3 (N.D. Cal. Aug. 28, 2015) ("The incorporation by reference doctrine 'is a narrow exception aimed at cases interpreting, for example, a contract. It is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment.") (quoting *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998)). Consideration of these letters would be more appropriate on a motion for summary judgment, after both parties have had the opportunity to create a complete record—not at the motion to dismiss stage.[3]

Moreover, judicial notice is only appropriate where a fact is "not subject to reasonable dispute because it: (1) is generally known . . . or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Although

---

[3] It is true that *Bilyeu v. Morgan Stanley Long Term Disability Plan* indicates that courts may treat motions to dismiss predicated on a plaintiff's failure to exhaust as an "unenumerated motion to dismiss," and thus "may look beyond the pleadings and decide disputed issues of fact." 683 F.3d 1083, 1088 (9th Cir. 2012). Since deciding *Bilyeu*, however, the Ninth Circuit has made clear that unenumerated motions to dismiss are disfavored. *See Albino v. Baca*, 747 F.3d 1162, 1168-71 (9th Cir. 2014) (en banc). The question is thus whether the failure to exhaust "is clear on the face of the complaint," warranting dismissal under Rule 12(b)(6). *Id.* at 1166 (describing such a situation as a "rare event").

Defendant contends that the accuracy and authenticity of the contents of its letters to Plaintiff "cannot reasonably be questioned," *see* Dkt. No. 16 at 2, Rule 201 contemplates judicial notice of facts "that only an unreasonable person would insist on disputing"—for example, those found in an "almanac, dictionary, calendar or similar source." *See Walker v. Woodford*, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006) (citing *U.S. v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994)) (internal quotation marks omitted). The letters proffered by Defendant are not such a source.

Accordingly, Defendant's request for judicial notice is denied. Plaintiff's request for judicial notice of an additional letter between her and Defendant, *see* Dkt. No. 21, Ex. 1, is denied for similar reasons.[4]

### 2. Plaintiff was required to exhaust the administrative remedies set forth in the EOC before filing this action.

Substantively, Plaintiff first contends that she was not required to exhaust her claims before bringing this action. *See* Opp. at 3. This argument plainly fails.

It is settled that "an ERISA plaintiff claiming a denial of benefits 'must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court.'" *See Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008) (quoting *Diaz v. United Agric. Emp. Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995)). This exhaustion requirement "is a creation of the federal courts . . . and is not written into the statute," and so is properly construed as a "prudential rather than jurisdictional requirement." *Mack v. Kuckenmeister*, 619 F.3d 1010, 1020 (9th Cir. 2010) (citing *Vaught*, 546 F.3d at 626). "[A] claimant need not exhaust when the plan does not require it," however. *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1299 (9th Cir. 2014). To determine whether a plan requires exhaustion, a court looks to whether it "contains language which could reasonably be read as making optional the administrative appeals process." *See id.*; *see also id.* at 1298 (citing concern that "[w]here plan documents could fairly be read as

---

[4] Both Plaintiff and Defendant seek judicial notice of the EOC (or excerpts thereof). *See* Dkt. No. 16, Ex. B (Defendant); Dkt. No. 21, Ex. 2 (Plaintiff). This request is denied as moot, since the EOC is incorporated by reference into the Complaint.

8

suggesting that exhaustion is not a mandatory prerequisite to bringing suit, claimants may be affirmatively misled by language that appears to make the exhaustion requirement permissive when in fact it is mandatory as a matter of law").

The EOC expressly requires exhaustion of Defendant's internal procedures. In the section on Dispute Resolution, it makes clear that claimants "may have certain additional rights if you remain dissatisfied *after* you have exhausted our internal claims and appeals procedure, and if applicable, external review." EOC at 57 (emphasis added). One of those "additional rights" is a civil suit under section 1132(a) of ERISA. *See id.* The EOC also states that failure to seek an IMR may result in waiving "the right to pursue some legal actions against us." *Id.* at 56. Such language could only "reasonably be read" as describing a mandatory internal review process that ERISA plaintiffs must exhaust before bringing their claims in federal court. *See Spinedex*, 770 F.3d at 1299. Consistent with the general rule, *see Vaught*, 546 F.3d at 626, the Court finds that Plaintiff was required to exhaust her administrative remedies before filing this action.

Plaintiff's arguments to the contrary are not persuasive. For example, she contends that "there is no requirement in the EOC . . . that [she] must exhaust [Defendant's] internal grievance procedures ***through appeal*** as a precondition to bringing suit under ERISA." Opp. at 3 (original emphasis). But in describing Defendant's Dispute Resolution procedures, the EOC states the following:

> We will send you an acknowledgment letter within five days after we receive your grievance. We will send you a resolution letter within 30 days after we receive your grievance. If you are requesting Services, and we do not decide in your favor, our letter will explain why *and describe your further appeal rights*.

*Id.* at 55 (emphasis added). Later, the EOC describes two possible methods of external review: contacting the California Department of Managed Health Care and seeking an IMR. *See id.* at 56. Again, the section on IMRs expressly states that claimants "must exhaust our internal grievance procedure before you may request [an IMR]," and that failure to request an IMR may result in the waiver of certain rights. *See id.* Critically, it is after describing the internal grievance procedures and the avenues for external review that the EOC describes "Additional Review," which provides that claimants may be able to bring an ERISA action in federal court "*after* [they] have exhausted

9

[their] internal claims *and appeals* procedure and, if applicable, *external review*." *See id.* at 57 (emphasis added). The only fair reading of the EOC is that a plaintiff can bring a suit under ERISA only after exhausting all levels of Defendant's administrative processes.[5]

Plaintiff's last argument on this point is that even if the language in the EOC regarding ERISA did apply to her, "the permissive language of the subsection, e.g., a claimant who exhausts 'may have additional rights' under ERISA, does not establish that exhaustion of a primary or secondary appeal is a sufficient and/or 'mandatory prerequisite to bringing suit' under ERISA." Opp. at 4 (quoting *Spinedex*, 770 F.3d at 1298). The Court disagrees. While *Spinedex* did hold that an ERISA plan's unclear language could render exhaustion permissive, *see* 770 F.3d at 1299, there is nothing unclear about the EOC's language. The provision's "permissive language" has to do with the uncertainty of the outcome of further proceedings under ERISA, not whether Plaintiff was required to exhaust.

### 3. It is clear from the face of the Complaint that Plaintiff failed to exhaust her administrative remedies.

Relying largely on materials outside the Complaint, Plaintiff next contends that even if exhaustion of her claims were required, it is adequately alleged. *See* Opp. at 7-8. The Complaint, however, entirely fails to allege exhaustion. Plaintiff simply makes no allegations relating to Defendant's dispute resolution procedures. Rather, the Complaint largely focuses on her interactions with different doctors, all of whom informed her either that the excess skin surgery she sought was not covered or not available. *See* Compl. ¶¶ 28, 30, 33, 40. These interactions do not amount to filing a grievance. The EOC makes clear that a claimant challenging Defendant's denial of coverage for a certain procedure "can file a grievance orally or in writing," and "must explain your issue, such as the reasons why you believe a decision was in error or why you are

---

[5] This also disposes of Plaintiff's suggestion that, because "she never made a post-service claim," she was not required to exhaust, because an "examination of the complete EOC shows" that the EOC's reference to ERISA was relevant only to Post-Service Claims and Appeals. *See* Opp. at 4. In fact, as is evident from the face of the EOC, the requirement that claimants exhaust Defendant's internal claims and appeals procedures before filing an ERISA action also applied in the Dispute Resolution context, when claimants like Plaintiff sought coverage before obtaining services. *See* EOC at 57.

dissatisfied about Services you received." EOC at 54. The EOC then sets forth the "[s]tandard procedure" for filing a grievance: claimants can (1) complete a "Complaint or Benefit Claim/Request form at a Member Services office"; (2) mail their grievance to a Member Services office; (3) call the Member Service Contact Center; or (4) complete the online grievance form. *See id.* Plaintiff makes no allegations that she completed any of those procedures, and nowhere does the EOC state that a personal communication with a doctor is an adequate means of submitting a claim.

Plaintiff also makes three references to "seeking authorization" from Defendant to go outside of Defendant's physician network to obtain excess skin surgery. *See* Compl. ¶¶ 32, 35, 38. Here again, she fails to plead exhaustion. She alleges that her first request for authorization to go outside of Defendant's physician network was denied on April 21, 2016, because "appropriate care [was] available within the plan." *Id.* ¶ 32. She makes no allegation that she filed a grievance challenging that decision, nor does she allege that Defendant resolved the grievance in a manner adverse to her interests. Plaintiff also fails to allege that she attempted to exercise any appeal rights (*i.e.*, through one of the two forms of external review described in the EOC) before filing this ERISA action.

Her allegations regarding her second authorization request are similarly deficient. She alleges that this request was denied on July 1, 2016, because the plan "ha[d] qualified medical professionals in Plastic Surgery to provide your care and services in plan." *Id.* ¶ 35. Before that decision was "affirmed" on August 6, 2016, *see id.* ¶ 37, Plaintiff elected to "[take] matters into her own hands" and obtain the surgery from an out-of-network physician at her own cost, *see id.* ¶ 36. Notwithstanding Plaintiff's failure to allege facts showing she engaged in Defendant's internal dispute resolution process, Plaintiff also concedes in the Complaint that she paid for care from an out-of-network physician, even though Defendant's denial made clear that care was available within her plan. *See id.* Although the fact that Defendant subsequently "affirmed its denial" of Plaintiff's request might suggest that Plaintiff was in the midst of Defendant's internal review process, the Complaint itself alleges that Plaintiff effectively abandoned Defendant's dispute resolution process before exhausting it.

11

Finally, Plaintiff fails to plead exhaustion as to her third authorization request. Following the surgery for which she paid out-of-pocket, she again sought an out-of-network referral for additional excess skin surgery. Compl. ¶ 38. Defendant denied the request. *Id.* Again, Plaintiff makes no allegations that she engaged in Defendant's dispute resolution process.

This is, therefore, one of the rare cases in which the plaintiff's failure to exhaust is evident from the face of the Complaint. *See Albino*, 747 F.3d at 1166.

### 4. Plaintiff's argument that her claim should be deemed exhausted fails because she never submitted a "claim" as defined in the relevant regulation.

Plaintiff also argues that her claim should be "deemed exhausted" because Defendant failed to comply with reasonable claims procedures. *See* Opp. at 4. The Court disagrees.

Every ERISA plan is required "to establish and maintain reasonable procedures governing the filing of benefits claims, notification of benefit determinations, and appeal of adverse benefit determinations" (*i.e.*, "claims procedures"). 29 C.F.R. § 2560.503-1(b); *see also* 29 U.S.C. § 1133(a) (stating that "every employee benefit plan shall provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant"). In keeping with this principle, plan administrators are generally required "to provide a claimant with written or electronic notification of any adverse benefit determination," which should include, *inter alia*, why the benefit was denied and the relevant plan provisions. *See* 29 C.F.R. § 2560.503-1(g)(1). Where a plan fails "to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies under the plan and shall be entitled to pursue any available remedies under" section 1132 of ERISA. *Id.* § 2560.503-1(l)(1); *see also Bilyeu*, 683 F.3d at 1088-89 (citing regulation).

Plaintiff argues at length that her claim under section 1132(a)(1)(B) should be "deemed exhausted" for Defendant's failure to follow reasonable claims procedures. *See* Opp. at 6. Specifically, she cites allegations in the Complaint detailing her "numerous encounters with Kaiser physicians—including her primary care physician, Dr. Yap, and plastic surgeons Drs.

12

Salim, Smith and Kim—who each advised her that her requests for excess skin surgery . . . were not covered under her health plan." *See id.* (citing Compl. ¶¶ 28, 30, 33, 40). In each case, Plaintiff alleges that Defendant "did not provide [her] with written or electronic notice regarding [the doctor's] denial for excess skin surgery." *See* Compl. ¶¶ 29, 31, 34, 41.

But whether Defendant complied with "reasonable claims procedures" as to these doctors' representations is beside the point, because the allegations in the Complaint establish that Plaintiff never submitted a claim within the meaning of the regulation. As defined in the regulation, "a claim for benefits is a request for a plan benefit or benefits made by a claim *in accordance with a plan's reasonable procedure for filing benefit claims*." 29 C.F.R. § 2560.503-1(e) (emphasis added). As previously discussed, Plaintiff fails to sufficiently plead that she complied with the claim procedures set forth in the EOC. *See* EOC at 54. Nor does she plead any facts showing that those procedures were unreasonable.

Accordingly, Plaintiff cannot show that her claims should be deemed exhausted.

### 5. Plaintiff fails to plead sufficient facts showing that engaging in the administrative process would have been futile.

Last, Plaintiff argues that "[a]ny further attempts . . . to exhaust, with respect to any other claim or issue (e.g., excess skin issues involving [her] arms, legs or breasts) would plainly have been futile," given the "total disconnect between what Kaiser physicians were telling Adan about her prospects for coverage and what Kaiser was telling Adan in response to her requests to go out of plan." *See* Opp. at 8. The Court disagrees.

"[D]espite the usual applicability of the exhaustion requirement, there are occasions when a court is obliged to exercise its jurisdiction and is guilty of an abuse of discretion if it does not, the most familiar examples perhaps being when resort to the administrative route is futile or the remedy inadequate." *Vaught*, 546 F.3d 620, 626-27 (quoting *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980)). But "bare assertions of futility are insufficient to bring a claim within the futility exception, which is designed to avoid the need to pursue an administrative review that is demonstrably doomed to fail." *Diaz*, 50 F.3d at 1485 (citing cases).

Plaintiff has failed to plead facts that would allow the Court to draw the inference that

1  administrative review of her request for an out-of-network referral for excess skin surgery for her
2  arms, legs, and breasts would have been futile. While Plaintiff alleges that Dr. Smith advised her
3  that her health plan did not cover the surgery, she pleads no facts alleging that she even initiated
4  the grievance process to challenge that decision, instead stating that she subsequently went outside
5  of Defendant's network to pay for the surgery out-of-pocket. *See* Compl. ¶¶ 40, 42. Plaintiff, in
6  other words, abandoned the administrative process twice. *Diaz* is instructive on this point. There,
7  the plaintiffs sued for medical benefits allegedly owed to them by an ERISA plan. *See Diaz*, 50
8  F.3d at 1480. Despite receiving several denial letters—all of which included instructions on how
9  to appeal—the plaintiffs elected not to appeal, instead attempting to discuss the matter with the
10 employer's on-site representative. *Id.* at 1482. In affirming the district court's dismissal for
11 failure to exhaust, the Ninth Circuit rejected the plaintiffs' arguments that "it would have been
12 'futile' for them to demand administrative review because [the] defendants [had] demonstrated by
13 their continued refusal to pay that they [had] no intention of doing so." *Id.* at 1485. The court
14 further held that it was the plaintiffs' "own delinquency in pursuing an internal appeal [that]
15 prevented the possibility of an administrative look at the merits." *Id.* at 1486. The same is true
16 here, where Plaintiff's "delinquency" prevented Defendant from undertaking administrative
17 review of the merits of her claim.

18 The Court further notes that in denying Plaintiff's requests to obtain surgery from an out-
19 of-network physician, Defendant consistently stated that the care Plaintiff sought was available
20 within her health plan. *See* Compl. ¶¶ 32, 35, 37. Perhaps recognizing that in most circumstances
21 this would preclude a futility argument, Plaintiff attempts to minimize Defendant's statements that
22 excess skin surgery was available within her health plan by pointing to the "total disconnect"
23 between Defendant and its physicians on this question, and the "dysfunctional and circular nature"
24 of Defendant's administrative review process. *See* Opp. at 8. Such an argument might carry more
25 weight had Plaintiff exhausted the process even once. As alleged, however, Plaintiff failed to
26 appeal two denials, *see* Compl. ¶¶ 32-34, 38, and went out-of-network before Defendant had a
27 chance to review another denial on appeal, *see id.* ¶¶ 35-37. There is therefore no basis to excuse
28 Plaintiff's failure to exhaust on grounds of futility.

14

Because this is one of the rare cases in which a failure to exhaust is evident from the face of the Complaint, *see Albino*, 747 F.3d at 1166, Plaintiff's claim under section 1132(a)(1)(B) is dismissed without prejudice. *See Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1180 (9th Cir. 1988) ("If a failure to exhaust is found, the proper disposition is dismissal without prejudice.").

**IV. CONCLUSION**

For the foregoing reasons, the Court **GRANTS IN PART** Defendant's motion. Plaintiff's claim under 29 U.S.C. § 1132(a)(1)(B) is **DISMISSED WITHOUT PREJUDICE** due to her failure to exhaust administrative remedies.

What remains is Plaintiffs' claims under 29 U.S.C. § 1132(a)(3), and as to these claims the Complaint and the motion to dismiss or stay briefing create more questions than they answer. The Court accordingly **SETS** a case management conference for April 3, 2018 at 2:00 p.m. In addition to the standard case management conference topics, the parties should address in their joint CMC statement and be prepared to discuss at the hearing the following topics: (1) the estimated time necessary for Plaintiff to exhaust the claim underlying the dismissed cause of action; (2) the basis for Plaintiff's theory that she may pursue broad, generalized, purportedly class-wide relief under ERISA's catch-all provision, 29 U.S.C. § 1132(a)(3); (3) whether those claims must or should in any event be stayed pending exhaustion, given Plaintiff's apparent theory that under section 1132(a)(3) she may seek such relief on behalf of a putative class; and (4) whether it would be productive for the parties to renew their ADR efforts earlier than the October 2018 deadline contained in their initial stipulation.

**IT IS SO ORDERED.**

Dated: 3/6/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge

15